Paul Marshall, Dominic Cimino, and Winfield Worline, Cleveland, Ohio, for plaintiff.

Fred J. Karem and Karem & Karem, Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This suit was filed December 4, 1950 by the United States against defendant, Peter G. Thomas.

It is alleged that the defendant is the landlord of housing accommodations designated as 748 Zeigler, Louisville, Kentucky; that from April 29, 1949, to August 29, 1949, the defendant, as landlord, received rent from his tenant T. E. Dillehay at the rate of $65 per month; that on March 9, 1950, the Area Rent Director, by executive order, reduced the rent on the premises from $65 per month to $42 per month, effective April 1, 1949; that within the period from April 29, 1949 to August 29, 1949, defendant had received in overcharges $92, which he had failed and refused to refund to the tenant after the order of reduction on March 9, 1950; that the tenant having failed for thirty days after the effective date of the order to sue for the alleged overcharge, the United States filed this action, seeking an injunction and restoration to the tenant Dillehay in the sum of $92, and judgment in favor of the United States for $184.

The defendant interposed a plea of res judicata by which it appears that seventeen days less than six months prior to the filing of this action, the United States filed Civil Action No. 1948, involving the same premises alleged to have been rented to a tenant—W. L. Williams—within the period from September 9, 1949 to March 9, 1950, at a rental of $60 per month, in which action a judgment was rendered on January 5, 1951 for $108, that amount being single the overcharge collected by the defendant within the period.

The action was based upon the Area Rent Director's order reducing the rent and or-

dering a refund of the overcharge from the effective date specified in the order of April 1, 1949.

In that action, on July 2, 1951, a rule was issued against the defendant to show cause why he should not be ruled in contempt of Court because of his failure to pay a specified judgment of $108 rendered on January 5, 1951.

Therefore, the question is whether or not the Government may split its causes of action involving a single defendant as landlord of the same premises for consecutive periods of rental to two tenants.

It appears that the first suit—No. 1948—involved a period of rental and collection of overcharges subsequent to that involved in the present action.

The Court is of opinion that this would be splitting of causes of action in violation of the wholesome doctrine of res judicata. See Baltimore Trust Company v. Norton Coal Company, D.C.W.D.Ky., 25 F.Supp. 968, 973; Rodman v. Rogers, 6 Cir., 109 F. 2d 520, 522; Hospelhorn v. Circle City Coal Company, 6 Cir., 117 F.2d 166, 168; Baltimore Steamship Company v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069.

The defendant's motion to abate the present action on his plea of res judicata is sustained and an order to that effect is this day entered.

ROSNER v. UNITED STATES.
No. 49180.

United States Court of Claims.
July 13, 1953.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

Gordon F. Harrison, Washington, D. C., Holmes Baldridge, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

This suit is brought under the War Contracts Hardship Claims Act, known as the Lucas Act, 60 Stat. 902, as amended by 62 Stat. 869, 992, 41 U.S.C.A. § 106 note, to recover the net loss alleged to have been sustained by plaintiff without fault ·or negligence on his part in the performance of Government contracts between September 16, 1940 and August 14, 1945.

The parties have stipulated that the net loss incurred by plaintiff on all of his Government contracts between September 16, 1940, and August 14, 1945, was at least $5,120.26. In its brief, defendant has conceded that $833.83 paid by plaintiff as factor's charges for services in connection with his Government contracts is an allowable cost of performing the contracts, thus increasing plaintiff's net loss to $5,954.-09. Plaintiff urges that his actual net losses should include an additional sum of $3,-816.80 representing amounts he withdrew from his business to compensate for his work of supervision and general management in connection with his Government contracts. Defendant argues, however, that "salary" to a sole proprietor for work on Government contracts is not an allowable item of cost of performance of the contracts under paragraph 101.7 of Executive Order 9786, U.S.Code Congressional Service 1946, p. 1848, 11 F.R. 11553.

The defendant contends that plaintiff's recovery is barred by paragraph 204 of Executive Order 9786, 11 F.R. 11553. The defendant also contends that, in any event, plaintiff's loss is limited to not more than $1,168.72 on the ground that this is the only part of plaintiff's loss as to which plaintiff has filed a proper "written request for relief" within the meaning of Section 3 of the Lucas Act.

In 1942, plaintiff entered into three contracts with the Quartermaster Corps of the War Department which provided that plaintiff would furnish and deliver certain quantities of cotton mattress covers to the defendant. One of the contracts was terminated by a supplemental agreement under which the plaintiff accepted $5,552.13 in full settlement. Under the other two contracts, deliveries were delayed and liqui-

dated damages and other damages were assessed against the plaintiff. On August 25, 1943, the plaintiff wrote to the contracting officer seeking relief from the liquidated damages of $10,257.03, the transportation costs of $1,168.72, and other damages for which plaintiff was liable under Article 26 of the contracts. This letter of August 25, 1943, defendant admits, is a proper "written request for relief" within the meaning of the Lucas Act.

Subsequently, by means of supplemental agreements executed pursuant to the First War Powers Act, 1941, 50 U.S.C.A.Appendix, § 611, the defendant released the plaintiff from the assessment of the liquidated damages. The plaintiff's requests with respect to the transportation costs and other damages, however, were not granted. The losses incurred by the plaintiff in performing the contracts were not due to fault or negligence on his part.

Plaintiff's claim for losses under the Lucas Act was filed with the Department of the Army within the statutory period, and the claim was denied. Subsequently, plaintiff filed a timely petition in this court.

With respect to the defendant's contention regarding paragraph 204 of Executive Order 9786, 11 F.R. 11553, this contention has been fully considered and rejected in some of our previous decisions, e. g., Howard Industries v. United States, 83 F.Supp. 337, 113 Ct.Cl. 231; American Construction Co. v. United States, 107 F.Supp. 858, 123 Ct.Cl. 408, certiorari denied 345 U.S. 922, 73 S.Ct. 780; and we find no reason for departing from them.

■ Plaintiff's business was a sole proprietorship. During the performance of the Government contracts, plaintiff performed certain necessary supervisory services which we have found were essential to the performance of these contracts. Of the total amount withdrawn by plaintiff as salary, he has allocated $3,816.80 to work on the Government contracts, and defendant does not dispute the correctness of this allocation. Defendant contends that this amount is not an allowable cost of performing the contracts, however, because a sole proprietor, like an individual partner in a partnership, is the owner of the business

and his "pay" represents a distribution of profits.

This same argument was made in connection with the allowability of partners' salaries as a necessary cost of performing Government contracts in Waxman v. U. S. (Atlantic Corporation, Assignee v. United States), Ct.Cl., 112 F.Supp. 570, and we decided that where the services performed by the salaried partners are essential to the functioning of the organization and would be required whether they were performed by a partner or by recruited personnel, the cost of such services is properly a charge to operating expenses without regard to who performs them.

We believe that what we said in the Atlantic case respecting the salaries of partners is equally applicable to salaries of sole proprietors, and accordingly we hold that the $3,816.80 salary to the plaintiff is properly allocable to the Government contracts and is a proper item of cost to be considered in determining his actual net loss. Whether or not this item may be used in computing plaintiff's *recoverable* net loss under the Lucas Act depends upon whether his request for relief was sufficiently broad to cover this amount.

■ As to defendant's contention that plaintiff's recovery cannot be more than $1,168.72, Section 3 of the Lucas Act provides in part that:

Claims for losses * * * shall be limited to losses with respect to which a written request for relief was filed with such department or agency on or before August 14, 1945, * * *.

Since the defendant concedes that plaintiff's letter of August 25, 1943 was a proper "written request for relief" within the meaning of the Act as to the transportation costs of $1,168.72, the main issue here is whether this letter also requested relief with respect to the field inspection charges of $292.86, the excess costs resulting from the partial termination of one of the contracts of $811.42, and the balance of plaintiff's losses which were due to his production costs exceeding the price paid him for those mattress covers which he did produce and deliver. This balance includes $3,816.80 representing salary to plaintiff,

$833.83 representing factor's charges, and $2,154.26 representing the balance of his operating loss.

We are satisfied that plaintiff's letter did request relief with respect to the field inspection charges and the excess costs resulting from the partial termination of one of the contracts, but did not do so with respect to the balance of plaintiff's losses. In his letter, the plaintiff requested that "all other *damages* be waived," that he be relieved "from all liquidated and other *damages*" and "from the consequences of the imposition of liquidated damages and costs of all character," and that the "entire amount of damages be forgiven." These requests pertained to damages or excess costs for which the plaintiff was liable to the defendant under Article 26 of the contracts (see finding 8), and thus included the field inspection charges of $292.86 and the excess costs resulting from the partial termination of one of the contracts of $811.42.

Nowhere in this letter of August 25, 1943, however, did the plaintiff ask for relief with respect to those losses he suffered due to his production costs exceeding the price paid to him for those mattress covers which he did produce and deliver. The plaintiff's references to his distressed financial condition were for the limited purpose of showing proper cause under the then existing Army regulations for his being relieved of the imposition of liquidated damages and other damages. These statements did not ask for reimbursement of such losses, and thus were not requests for extra-legal relief with respect thereto.

Accordingly, we are of the opinion that plaintiff's letter of August 25, 1943 requested relief with respect to $2,273 of his losses, and that plaintiff is entitled to recover this amount. Inasmuch as that letter did not request reimbursement for costs representing plaintiff's sole proprietor's salary allowance, the factor's charges, and the balance of his operating net loss properly allocable to these contracts as necessary costs of performance, plaintiff is not entitled to recover such amounts under the Lucas Act.

The plaintiff is equitably entitled to the amount of $2,273.00 in settlement of its claim. An order will be entered, pursuant to Section 6 of the Lucas Act, directing the Department of the Army to settle such claim, in accordance with the findings of this court, in the amount of $2,273.00.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.

### NICK DELIS CO., Inc. v. UNITED STATES.

No. 627–52.

United States Court of Claims.

July 13, 1953.

Edward Gallagher, Washington, D. C., for plaintiff.